# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MELISSA FAITH SOLOMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20CV243 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Melissa Faith Solomon, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 11 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 14, 16; see also Docket Entry 15 (Plaintiff's Brief); Docket Entry 17 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of January 19, 2016. (Tr. 273-81.) Upon denial of that application initially (Tr. 150-65, 180-83) and on reconsideration (Tr. 166-79, 187-94), Plaintiff requested a hearing de novo before an

Administrative Law Judge ("ALJ") (Tr. 195-96). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 121-49.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 99-114.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 256-57, 386-87), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2021.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since January 19, 2016, the alleged onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: obesity; right knee medial meniscus tear; synovitis; tendinitis; osteoarthritis; chondromalacia and illiotibial band syndrome; adjustment disorder with mixed anxiety and depressed mood; depressive disorder; chronic obstructive pulmonary disease (COPD); arthritis of the feet; sciatica; degenerative disc disease of the lumbar spine with stenosis and spondylosis; right elbow bursitis; and left knee degeneration.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except [she] can

occasionally push or pull or operate foot controls with
both lower extremities.  [She] can frequently reach and
handle with the right upper extremity.  [She] can
occasionally kneel, crouch, stoop, balance, and crawl,
and can occasionally climb stairs and ramps.  [She] can
never climb ladders, ropes, or scaffolds, and can never
be exposed to unprotected heights and moving mechanical
parts.  [She] can have occasional exposure to dust,
mists, gases, noxious odors, fumes, pulmonary irritants,
and poor ventilation.  [She] can tolerate occasional
exposure to vibration.  [She] is able to understand,
carry-out, and remember simple instructions, and make
simple work related decisions.  [She] will be off task 10
percent of the workday.

. . .

6.   [Plaintiff] is unable to perform any past relevant
work.

. . .

10. Considering [Plaintiff]'s age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as
defined in the . . . Act, from January 19, 2016, through
the date of this decision.

(Tr. 104-13 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope

3

of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility

4

determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects

5

adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the

---

relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

7

remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

## B. Assignment of Error

In Plaintiff's sole issue on review, she faults the ALJ for "committ[ing] a reversible error by failing to conduct a proper function-by-function analysis of [Plaintiff]'s exertional capacities and by failing to explain how the evidence supports the hearing decision's [RFC]" (Docket Entry 15 at 2-3 (bold font and single-spacing omitted)) in violation of Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing [RFC] in Initial Claims, 1996 WL 374184 (July 2, 1994) ("SSR 96-8p"), and Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (see Docket Entry 15 at 3-5). In particular, Plaintiff argues that "[t]he ALJ's RFC assessment is inadequate to establish that [Plaintiff] retains the ability to perform the light occupations cited at step five of [the SEP] because the ALJ failed to address [Plaintiff]'s exertional capacity to lift, carry, stand, walk, or sit." (Id. at 7 (citing Tr.108-12).) In that regard, Plaintiff notes that "[t]he RFC assessment finding itself does not specify how much weight

---

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

[Plaintiff] can lift or carry, nor how many hours of an 8-hour workday she can stand, walk, or sit (id. (citing Tr.108)), as well as that "the section of the hearing decision devoted to the RFC assessment only summarizes the medical evidence . . . [and] fails to discuss or specify how much of these five strength demands [Plaintiff] is capable of performing" (id. (citing Tr. 108-12)).

Plaintiff further asserts that "[t]he ALJ's reference in the RFC assessment to the regulatory definition of light work does not clarify this issue" (id. at 7 (referencing Tr. 108 (in turn citing 20 C.F.R. § 404.1567(b)))), because that definition provides "that work can be classified as light because it requires lifting 20 pounds at a time with frequent lifting of 10 pounds[,] . . . because it requires significant standing or walking[,] . . . [or because] it involves sitting most of the time with some pushing and pulling of arm or leg controls" (id. at 8). Plaintiff additionally contends that the ALJ's RFC for light work conflicts "with [Plaintiff]'s hearing testimony that she has significantly restricted ability to stand and walk due to pain." (Id. at 6 (citing Tr. 131, 132, 136).) Plaintiff deems "[t]h[at] error by the ALJ [] highly significant," because Plaintiff "was age 51 at her alleged onset date of disability," and "the Medical-Vocational Rules direct a finding of disabled if [she] is restricted to sedentary, rather than light work." (Id. at 9.) Those arguments fail to warrant reversal or remand.

9

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. § 404.1567. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. § 404.1569a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion." Woods, 888 F.3d at 694 (internal emphasis, quotation marks, and brackets omitted). As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary,

10

light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. See Mascio v. Colvin, 780 F.3d 632, 636–37 (4th Cir. 2015). Specifically, it stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," Mascio, 780 F.3d at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Here, the ALJ's decision supplies the necessary "accurate and logical bridge," Woods, 888 F.3d at 694 (internal quotation marks omitted), between the evidence and his findings that Plaintiff's back, knee, and foot impairments (A) qualified as severe (see Tr. 105) but (B) did not cause limitations greater than the lifting, carrying, standing, walking, and sitting ("exertional") requirements of light work with, inter alia, occasional pushing, pulling, and foot control operation with the lower extremities as well as occasional postural movements (see Tr. 108).

11

First, the ALJ's evaluation of the opinion evidence supports the exertional restrictions in the RFC. The ALJ accorded "some weight" (Tr. 110) to the opinion of the state agency medical consultant that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds, as well as stand, walk, and sit each for up to six hours in an eight-hour workday (see Tr. 174-75), and specifically "credit[ed the consultant's] review of [Plaintiff]'s medical records and citation to specific references that support[ed the consultant's] opinion (Tr. 110 (citing Tr. 176)). Due to Plaintiff's "frequent complaints regarding her knee and back pain, in addition to noted tenderness upon physical examination and observation of degenerative changes through radiographic imaging" (Tr. 110-11 (citing Tr. 585, 638, 664, 677, 694, 711, 1093-94)), the ALJ added limitations to occasional pushing, pulling, and foot control operation with the lower extremities, as well as increased the postural restrictions (see Tr. 108).

Plaintiff's contention that the ALJ's decision violated SSR 96-8p and Woods because "[t]he RFC assessment finding itself does not specify how much weight [Plaintiff] can lift or carry, nor how many hours of an 8-hour workday she can stand, walk, or sit" (Docket Entry 15 at 7 (citing Tr. 108)) falls short. The ALJ found that Plaintiff retained the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b)" (Tr. 108 (emphasis added)) which regulation, as Plaintiff acknowledged (see Docket Entry 15 at 7),

12

defines light work to involve lifting/carrying/pushing/pulling 20 pounds occasionally and 10 pounds frequently, see 20 C.F.R. § 404.1567(b). Moreover, the ALJ credited the reconsideration-level state agency medical consultant's opinion that Plaintiff can lift up to 20 pounds occasionally, ten pounds frequently, and stand, walk, and sit each for up to six hours in an eight-hour workday (see Tr. 110-11, 174-75). The ALJ's citation of Section 404.1567(b) and his adoption of the consultant's light-level exertional limitations permit the Court to ascertain the exertional limitations the ALJ intended to adopt in the RFC. See Hacker v. Saul, No. 5:20CV132, 2021 WL 852197, at *3, *5 (N.D.W. Va. Feb. 18, 2021) (unpublished) (finding no error in ALJ's expression of RFC as "sedentary work as defined in 20 C.F.R. § 416.967(a)," where court could look to SSA's definition of sedentary work to determine exertional limits of such work, and where "ALJ considered all of the evidence and explained his determination at length, considering [the p]laintiff's testimony, the medical record evidence, and the opinion evidence"), recommendation adopted, 2021 WL 851879 (N.D.W. Va. Mar. 5, 2021) (unpublished). Given the ALJ's exertional RFC findings, he clearly found that, regardless of whether the occupations in question qualified as light because they involved the lifting requirements of light work, because they involved a significant amount of standing and walking (neither of which would exceed six hours in an eight-hour workday), or because they

13

entailed primarily sitting with the operation of arm controls (the jobs could not have involved foot control operation, as the RFC precluded that activity (see Tr. 108)), Plaintiff retained the capacity to perform that work.

Plaintiff's assertion that the ALJ's RFC for light work conflicts "with [Plaintiff]'s hearing testimony that she has significantly restricted ability to stand and walk due to pain" (Docket Entry 15 at 6 (citing Tr. 131, 132, 136)) also misses the mark. The ALJ expressly acknowledged Plaintiff's statements "that she c[ould] only stand or walk for short periods due to swelling in her feet and pain in her knees, and [wa]s unable to lift more than 10 pounds" (Tr. 109 (citing Tr. 338)), but found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision" (id.), and Plaintiff has not challenged that determination (see Docket Entry 15). The ALJ supported that finding with the following analysis:

> . . . Although the evidence supports [Plaintiff's] alleged impairments, it does not support the alleged severity of such impairments. [Plaintiff] reported on a number of occasions during the period at issue that she continued to work as a waitress, and that she was spending long hours on her feet (See, e.g., [Tr. 474, 575]). Such work indicates that [Plaintiff] retained the ability to perform the modified light work as outlined in her [RFC], as do [Plaintiff]'s reported activities of daily living, including that she can shop for groceries, drive, take care of her niece and granddaughter on

14

> occasion, and prepare simple meals [(Tr. 331-40, 417)]. Finally, while [Plaintiff]'s physical examinations showed some deficits, particularly regarding her lumbar spine and bilateral knees, there was minimal to no <u>neurological deficits</u> noted, and [Plaintiff] was consistently observed to walk with a <u>normal gait</u>. Overall, [Plaintiff]'s treatment records and described activities of daily living are consistent with an ability to perform to [sic] work as described in her [RFC] (See, e.g., [Tr. 415, 454, 544, 765, 1093]).

(Tr. 111-12 (emphasis added).) The ALJ properly relied on Plaintiff's waitressing work during the relevant period, her varied daily activities, and her consistently normal gait and neurological findings in his analysis of Plaintiff's subjective symptom reporting, see Social Security Ruling 16-3p, <u>Titles II and XVI: Evaluation of Symptoms in Disability Claims</u>, 2017 WL 5180304, at *5-8 (Oct. 25, 2017) ("SSR 16-3p") (including "objective medical evidence" and "daily activities" among permissible factors in consideration of intensity, persistence, and limiting effects of symptoms), and that analysis further supports the exertional limitations in the RFC.

The ALJ's discussion of the medical evidence relating to Plaintiff's orthopedic impairments additionally demonstrates that the ALJ properly considered the evidence regarding Plaintiff's abilities to perform the exertional requirements of light work. In that regard, the ALJ noted that:

- "[e]xamination of the knee, in January 2016, demonstrated that [Plaintiff] showed some tenderness, but with full range of motion,

15

> well-healed scars post-surgery, and . . . a normal gait" (Tr. 109 (citing Tr. 415));
>
> - "treatment notes, from January 2017, showed [Plaintiff] continued to complain of knee pain, but [she] had not received treatment or pain management since her surgery," and "[t]reatment providers counselled [sic] [Plaintiff] to use heat, [V]oltaren gel, and an Ace knee wrap" (id. (citing Tr. 627));
>
> - "[s]ubsequent radiographic images of [Plaintiff]'s left knee showed minimal degenerative changes" (id. (citing Tr. 1094)), and "[d]uring more recent treatment visits in 2018, [Plaintiff] . . . did not mention any pain or limitations related to her knees during several treatment visits" (id. (citing Tr. 691, 698)); and
>
> - in 2017, "[x]-rays and MRI films of [Plaintiff]'s lumbar spine showed some degenerative changes, spondylosis, and moderate spinal stenosis at L4-5" (id. (citing Tr. 711, 1094, 1171)), but "[p]hysical examinations showed no significant deficits: [Plaintiff] was observed to show some back tenderness to palpation, but with normal range of motion[ and] strength, negative straight leg raise testing, and largely normal neurological findings" (id. (citing Tr. 701)), and Plaintiff's "treatment provider assessed there was no neurological deficit to suggest emergent or surgical presentation" (id. (citing Tr. 1095)).

After evaluating the objective medical evidence relating to Plaintiff's orthopedic impairments, the ALJ "f[ound] that, given [Plaintiff]'s treatment for elbow, spine, and knee impairments, combined with her morbid obesity and observation of some deficits upon physical examination, <u>limitations are warranted, including to modified light work</u>." (Tr. 110 (emphasis added).) That analysis suffices to show that the ALJ complied with <u>Woods</u> and SSR 96-8p by

16

appropriately evaluating Plaintiff's abilities to perform the exertional requirements of light work.

For these reasons, Plaintiff's sole assignment of error fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing the Commissioner of Social Security (Docket Entry 14) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) be granted, and that judgment be entered dismissing this action.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 28, 2021